Mr. Campbell, I believe, right? Yes, Your Honor. Please proceed. Do you want to reserve any time? I would like to reserve three minutes of time. Three minutes, okay. Good morning, Your Honor. It's Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Jimenez. Because the evidence was stipulated essentially by the parties, we will not be arguing any abuse of discretion. Instead, we're simply arguing today that there was insufficient reasonable suspicion to perform a Terry's stop. In essence, the district court denied the motion after considering primarily two cases, Florida v. J.L., the Supreme Court case, and this Court's opinion in Terry Crespo. The district court found that the facts were more analogous to Terry Crespo, and respectfully, we believe that was error. If we look at the facts in the law in Florida v. J.L., we see that the Supreme Court relied heavily on the idea that an anonymous tip seldom provides sufficient information for a Terry stop, and it cited the Alabama v. White case. And we believe that the facts of our case are more in line with that case than the Terry Crespo case. First off, in our case, it was an anonymous 911 call. Second? But it was one that could be tracked, could it not? He said that he lived in the apartment and he had observed these things personally. Obviously, the 911 operator could check the phone that it came from, so a little different, isn't it? Admittedly, slightly different than Florida v. J.L. However, first off, I don't think it's clear that he had actually observed the alleged fight. In fact, if we look at the transcripts, it specifically says, I heard there was a domestic, I heard there was an argument, I heard there was a fight. So it's not clear, number one, that the individual reporting this has any direct knowledge of the events at all. Secondly, I think an important difference between our case in Florida v. J.L. and Alabama v. White is that there's no predictive information given. Instead, at best, it is a description of what he has heard has happened and then identifying information about the individuals. Was there not evidence that he claimed to have seen at least your client with a firearm? The evidence, as I understood it, because the call itself rambles a bit, was that at one point, what appears to be the caller's children say that they think that he may have put a firearm in a storage unit. But it's, they think he may have. It is unclear what they allegedly saw, and certainly the individual on the phone did not see that. What about the evidence, if any, about the female and her having a firearm, supposedly? The caller seems to identify more directly, particularly initially in the call, that a female had essentially left that apartment with a firearm. That seems to be the more concrete evidence. However, even then, it is unclear what the basis of that is. Instead, it simply says, I heard, and then goes on to relate what may or may not be what the person had heard. At no time, I believe, is there any direct evidence that the individual making the phone call actually saw anything. It's entirely, the evidence is entirely. You're saying that the evidence isn't that they saw Deborah take off with a gun? I don't believe the evidence is that the individual making the phone call saw that. Oh, I understand that, but this isn't the person who was reporting. It was reporting the events as to, as I imagine reading what was said there, two sons were watching and relaying the information to that person. Your Honor, I think that's what it seems like. That's a possibility, but I don't think it's 100% clear. I don't know how it could be other than that. I mean, there were two people talking, there's no question, because she was relaying one, he was, sorry, relaying one information over another. I guess I'm going to have to read it again, but I thought it was pretty clear. The girl Deborah took off with a gun. The male Alex was following her with a gun. Now he doesn't think he has it because he took off in his truck, but he's now back and parked the truck, the big blue Dodge Durango, and my son says Alex hid the gun in the storage unit when he ran there. That's what I saw or read. Then the operator heard the reporter tell his sons to get out of the window because he'd had a problem with the manager. He didn't want to be, to tell him who he was, and so he didn't want to get involved. So they come to the scene, right? The officers. Correct. The officers do eventually come to the scene. Once coming to the scene, what did they find? At the scene, an individual who is ultimately my client is seen at a Dodge Durango, a blue Dodge Durango, which is outside the apartment. He's standing essentially at the passenger side door on the driver's side. He's told what to do, and he won't do it, right? He's starting to walk away. There's a delay. He asks what's going on, who made this phone call, and then he is taken down. The officer called him Alex. Correct. Where did the officer get that? That information was relayed from this phone call. But if we look at. . . The officer knew he was Alex and knew there was a Debra and knew that Debra lived in the apartment 210. Correct. But if we look at Florida v. J.L., it's clear that simply identifying an individual who was found at that location does not provide reasonable suspicion to believe that that individual has committed a crime. You've got this domestic violence problem, right? It's described as a domestic incident and it's never clear whether there was actually any violence or not. And guns involved, and the excitement of the 911 call, and he's identified as Alex and he's described what he's wearing and what kind of car he's got, and the police officer sees him, says, Stop, Alex. Alex stops. Put your hands up on the car, and he won't do it.  Well, you're. . . He told him to take his hands out of his pockets and he wouldn't do them. Again, I think the problem is that we have an anonymous caller. We don't know what the basis of that person's information is. There's no predictive behavior as there is in Terry Crespo, Van Alabama v. White. We simply have an unknown person saying. . . So we're going to make this difference based on the fact that nobody said he's going to kill her. I don't think that's the only distinguishing difference. Well, you're kind of basing all you've got to say, no predictive behavior. The only thing that I can find here that wasn't said that you think ought to be said is he's going after her with a gun, she's got a gun, and he'll kill her or she'll kill him. That would make it predictive. Is that enough? I don't think predictive is the only difference in this case versus Terry Crespo. I think that in Terry Crespo, one of the factors that this court relied on was the fact that the caller was an actual victim and had actually witnessed the events. Let me talk about Illinois v. Gantt. Excuse me, Illinois v. Gates. There, and I quote, an anonymous tip is deemed reliable if the tip is from a known source, from an unquestionably honest citizen, or from a questionable source who provides explicit, detailed description of the wrongdoing. Don't you think this is a, even if you say it's a questionable source, they provided explicit, detailed description of the wrongdoing? Your Honor, respectfully, I would say it is not, because what we have here is someone who is saying what they heard. We don't know when they heard it. We don't know from whom they heard it. We don't know how recent it is. So I think this would be a different situation if you had an individual who had described an incident in great detail that indicated credibility. Here, we don't have that. I would like to reserve their remainder. Okay. May it please the Court, Tom Hanlon, a parent for the United States. Defense counsel started off his argument by comparing this case to J.L. It's the government's position that J.L. is distinguishable from this case. J.L. was a call to the police department regarding general criminality. In the present case, we have an emergency 911 call that was made to dispatch about a domestic violence incident. In J.L., that was purely an anonymous tip. In this case, I submit to the Court that the caller did not specifically identify himself, did not provide his name. However, this Court has recognized that where information provided by a caller narrows the class of individuals to a specific group of people, then that is not truly an anonymous call. And that's what the district court found in his analysis when looking through the appropriate cases. For example, in Fernando Castillo, this Court has determined that an employee from the Montana Transportation Department, who provided information to the Montana State Police, although the officer in the dispatch didn't know the specific name of the person who provided the information, it was narrowed so that the officer knew that it was someone from this department. Now, counsel's argument, which I worried about just a little, if I look at Morales and I look at even Alabama v. White, one of the things where I determine whether the anonymous tip is sufficient is not just the range of details or the movements corroborated by independent police investigation, but that they predict the suspect's future movements rather than simply describe easily observed facts and details. Yes, Your Honor. How does this relate to that? Well, I think there's two positions. One is in regards to that specific question, he's providing the details, predictive information, as to what's happening on the scene at that particular time. Oh, he's, as I understand it, simply describing easily observed facts and details. He's observing. What did he predict? Well, what he provided to the dispatch was what he was observing or his son was observing, yelling at him through the window. So he doesn't predict exactly where the defendant's going, he just advises, the court is correct, of what he's observing himself, firsthand information as to what's happening outside of his apartment complex. Is there any evidence in the record of any previous domestic disputes between the defendant and the female in this case? No, Your Honor, there is nothing in the record regarding that. However, the person who called 911 did provide several points of information to the dispatcher, which would show us that the police would be able to narrow down the class of potential callers in this case to someone who resides at the Cascade Apartments. First, he made a 911 call, which was a recorded call, as distinguished from jail where there is no transcript of the call. The court has received a transcript of the call. Second, he tells the dispatcher, look, I want to be anonymous because I had a problem with the manager earlier today. Certainly indicating that he lives in this apartment complex. He's able to identify the apartment number, apartment number 210, where the incident occurs. He's able to identify the folks in detail, Alex and Debra. He's able to identify the fact that the defendant was drinking and that Debra is known to be a methamphetamine user. These are all details he knows because he lives in this apartment complex.  I guess I'm trying to figure out if I can step over where it suggests that Morales predicts the suspect's future movements. And I would suggest he's not predicting Morales' predictive future movements, but I would suggest that the officers in this case are certainly walking into a dangerous situation. And for reasonable suspicion to exist, if the officers have a reasonable belief or a reasonable suspicion that the subject, the defendant in this case, is armed and presently dangerous, they may conduct a Terry frisk of him to find out if he has weapons. Well, I can understand your argument that this is not jail or Brown because here a crime has been reported and they were not reported in those particular instances. That's why I'm focusing you on these other cases. Yes, Your Honor. In regards to predictive information, is that where the court wants the focus to be? And I would submit to the court that this particular caller is not advising predictive information. I would suggest that this is stronger, more like Terry Crispo, where he's relaying information firsthand as to what's happening at this apartment complex, advising law enforcement officers of the situation at hand. And I would point out that this court has recognized repeatedly that domestic violence situations are certainly dangerous to law enforcement officers. This court has recognized that more law enforcement officers are killed or wounded when responding to domestic violence calls than any other call. And in this case, the record is clear that the officer is responding to a domestic violence call. Throughout the arguments, there's an argument by counsel as to what the officers knew and when they knew it. I believe that Excerpt to Record 47, the catalog, shows clearly that the officers were aware of the names of the persons that were involved in the domestic violence. It was a physical fight. They were aware that the male was possibly following the female with a gun. They were advised that the female had a gun. They were advised of the location of the suspect in the Dodge Durango. I would submit to the court that the officers had reasonable suspicion based upon articulable and specific facts that this person may have a gun and may be armed and dangerous. So the predictive element is irrelevant from the government's perspective? I believe the predictive element is not relevant here, Your Honor, unless the court has further questions of me. I don't believe we do. Thank you, Your Honor. Thank you, Your Honor. Just briefly, in regard to the argument that this was a dangerous situation, I would point to Florida v. J.L., which specifically refused to create, in essence, a firearm exception to Terry. Well, just a minute. J.L. didn't even report a crime. That's correct, but the court clearly... There's a crime. There's clearly a crime here reported. Well, I don't know that J.L. is your best case. I'm trying to figure out why it is. That seems to step up the stuff. We're not just reporting, well, these are the general circumstances out here. We're saying there's a crime. It's being committed. We're watching it. Your Honor, that's correct, but the person saying that, well, I'm not sure that it's correct that the person is saying we're watching it because the crime had allegedly already occurred and it was only being reported at best by hearsay. So it's unclear that the person is actually watching it. As far as the range of details reported, the government essentially is assuming that those details are being reported correctly. From my reading of the 911 call, either these are professional actors following a script or they're telling you what they think they're seeing, and you rely on it.  But what they're seeing is, what they're describing is somebody left, somebody else left, somebody drove up and parked. It isn't somebody. They know their names. They know where the woman lives. They know this is Alex. They know he's in the same car. They describe the car, the Durango. They describe exactly. So when the police get there and he's leaning into it, he doesn't have any problem knowing this is Alex leaning into the Durango. I understood, Your Honor, but the difficulty is that the evidence of the crime is so indefinite that whether or not they can identify an individual misses the entire point of whether or not they can identify that a crime has actually occurred. And that's what we're simply missing here based on speculative hearsay of what somebody has heard in reporting a crime. And I think it's clear in this case, unlike, say, Terry Crespo, that the individual reporting the crime had had time to think about this. This was not an excited utterance because he clearly knew that he didn't want to identify himself. He'd had time to reflect, and we think that makes an important difference. Any other questions from my colleagues? Thank you both for your argument. We appreciate it. The case of United States v. Jimenez is submitted.
judges: Walter, Smith, Smith